Kirkpatrick *et al.*, *vs.* The Bank of Augusta *et al.*

KIRKPATRICK *et al.*, *vs.* THE BANK OF AUGUSTA *et al.* HOPE *et al.*, *vs.* MOORE & PHILPOT. NEWBY *vs.* HOPE *et al.* WHITE *et al.*, *vs.* HOPE *et al.*

1. The lien given for negro hire, for negroes employed in steamboats and other water craft on certain rivers in this State, does not extend to the Savannah river.

2. A mortgage given to the Bank of Augusta was foreclosed upon the affidavit of John Bones, as President of the Bank of Augusta, instead of as President of the Corporation, viz. : "The President, Directors and Company of the Bank of Augusta:" *Held*, That the irregularity— if it be such—was not material.

3. By the Act of 1847, (*Cobb*, 557), liens against steamboats may be enforced by the creditor, his attorney or agent; and by the same Act, a demand made on the owner of the boat, his agent or attorney, is sufficient.

4. No lien is given by statute for services rendered, and materials furnished for the construction of a boat "whilst getting ready for navagation." It must be after it has actually entered upon the navigation.

5. The statute gives a lien to "machinists" only, and not to those who merely vend machinery.

6. It is sufficient, under the Act of 1847, to state that the boat upon which the lien is claimed, has "arrived at her place of destination," without the additional words, in the language of the Act of 1841, "to which she was last freighted."

7. The lien given by these various Acts, takes date from the judgment.

8. To invest a vessel with a character of nationality, it is necessary that it be entered at the custom-house, and in a contest between foreign creditors of said vessel, or a foreign creditor and our own citizens, no lien, under our State laws, would be available, unless the same be recorded or registered as required by the Act of Congress, in the office of the Collector of Customs. But a failure to do this will not displace a lien already acquired under our own laws, in a contest between our own citizens.

9. The Act gives a lien for "wood and provisions"—not for "*supplies*"—furnished steamboats.

10. Where an individual or a company own several boats, the lien provided by law for wood, provisions, etc., is not restricted to any one boat, but covers the whole, and the judgment may be entered up against all, provided all have reached their point of destination, or as they severally arrive there. But if entered against one or more only, it is restricted to the money arising from the sale of the boat or boats against which the judgment is entered.

Rule against the Sheriff, from Richmond county. Decision by Judge HOLT, in vacation, on 25th April, 1860.

These four cases were consolidated and argued together.

A rule having been taken against the sheriff, requiring him to show his actings and doings under certain *fi. fas.*, he made a return thereto, showing that he had in his hands, subject to distribution, a considerable sum of money, raised by a sale of the steamboats John A. Moore, Columbia and Talomico, and that said sum of money was claimed by divers persons under liens against said boats, by virtue of the steamboat lien laws, and by Joseph M. Newby, under certain common law *fi. fas.*, and by the President, Directors & Co. of The Bank of Augusta, under a mortgage *fi. fa.* The mortgage of The Bank of Augusta was prior, in point of date, to the said judgments in favor of said Joseph M. Newby; and said mortgage having been recorded in the Clerk's office of the Superior Court of said Richmond county, within three months after the date thereof, and never recorded at all in the office of the Collector of Customs; and said "John A. Moore" having been, on the 5th day of August, eighteen hundred and fifty-nine—subsequent to the date of the said mortgage—duly enrolled in the office of the Collector of Customs at Savannah, Georgia.

By consent of parties, certain questions of law, arising out of said claims, were submitted to his Honor, Judge Holt, with leave to except to his decision when made. Among others, the following questions were submitted:

Where the affidavit sets forth that provisions or wood were furnished to the "fashion line," to-wit: the John A. Moore, Columbia and Talomico, without separating the amounts, or specifying the amounts furnished to each, and the judgment is rendered against the defendants and the three boats, (without any separation or specification, as above stated, can the same be enforced?

Where such separation or specification is made in the affidavit, but not in the judgment or *fi. fa.*, can the judgment be enforced?

Do the several Acts giving a lien for labor performed, services rendered, etc., upon steamboats navigating the Savannah river aforesaid, authorize a lien for negro hire?

The mortgage of The Bank of Augusta not having been

recorded in the office of the Collector of Customs, where, as it is insisted, the "John A. Moore" is, or ought to have been registered or enrolled, is it valid against the other claimants to the fund, who have not had actual notice?

In the case of the mortgage *fi. fa.* in favor of The Bank of Augusta, the affidavit is in the name of "John Bones, President of the Bank of Augusta." · It is suggested that the affidavit does not run in the name of John Bones, as President of the Corporation, viz: "The President, Directors and Company of the Bank of Augusta?" and it is submitted whether or not this is legal?

Where the affidavit to enforce a lien, other than for negro hire, is made by the attorney at law, or agent of the plaintiff, can the lien be enforced?

Can judgments, founded upon the three following affidavits, be enforced?

### *Affidavit of Solomon C. White.*

STATE OF GEORGIA, RICHMOND COUNTY:

Before me, Benjamin H. Warren, a Justice of the Inferrior Court, in and for said county, came in person Solomon C. White, of said county, who, after being duly sworn, deposes and says that he has been employed on a steamboat named or called the "John A. Moore," belonging to Samuel Moore and Thomas N. Philpot, of Augusta, in said county, in the capacity of a *painter;* that he was so employed by said owners, on the fourteenth day of April last past, and remained on said boat performing the services of a painter until the twenty-seventh day of May, said steamboat being, during that time, at her wharf in the city of Augusta, getting ready for navigating the Savannah river, and which said boat, since her completion, has been, and is now, navigating the Savannah river; it being agreed by, and between deponent and said owners, that he should receive, as pay for such services, the sum of two dollars and fifty cents a day; that said steamboat has arrived at its place of destination, to-wit: the city of Augusta, and is now lying in the said county of Richmond; that the sum of one hundred and forty-eight dollars and seventy-five cents is due to the deponent by said owners for services as painter, performed by him on said steamboat, "John A. Moore," as aforesaid; and that since

the said amount became due, and within twelve months afterwards, on the twenty-third day of June last, he demanded payment by himself of said amount so due to him as aforesaid, of the said owners, Samuel Moore and Thomas N. Philpot, personally, in said county, by whom payment of said amount was refused, and deponent has, therefore, a lien on said steamboat according to law.

(Signed)          SOLOMON C. WHITE.

Sworn to and subscribed before me, this 10th day of August, 1859.

In presence of B. H. WARREN, J. I. C. R. C.

*Affidavit of William H. Goodrich.*

STATE OF GEORGIA, RICHMOND COUNTY:

Before me, William W. Holt, Judge of the Superior Court of said county, personally appeared William H. Goodrich, who being duly sworn, deposes and says: That Thomas N. Philpot and Samuel Moore, of said county, are the owners of the steamer "John A. Moore," a steamer navigating and running on the Savannah river; that said steamer has arrived at the landing port, or place of destination to which she has been freighted, and is now lying at the wharf in the city of Augusta, in said county. And deponent further swears, that there is due to him by said Thomas N. and Samuel, owners of said steamer, the sum of three thousand one hundred and seventy dollars and sixteen cents, for labor and services by him, done and performed on board of said steamer "John A. Moore," and for materials furnished in the building of said steamer. Deponent further swears, that the whole of said sum has become due and payable within the last twelve months; that he has this day demanded of the said Thomas N. and Samuel, the payment of said amount, which they refused; and the twelve months having not yet expired, this deponent claims a lien on said steamer "John A. Moore" for said amount.

(Signed)          WM. H. GOODRICH.

Sworn to and subscribed before me this 11th day of November, 1859, at thirty minutes past three o'clock.

WM. W. HOLT, Judge of S. C. M. Dist.

Kirkpatrick *et al.*, *vs.* The Bank of Augusta *et al.*

*Affidavit of Wm. Schley.*

STATE OF GEORGIA, RICHMOND COUNTY:

Personally appeared William Schley, who, being duly sworn, says, that Thomas N. Philpot and Samuel Moore, both of said county, are justly indebted to him in the sum of three thousand dollars, and interest thereon from the fourth day of January, eighteen hundred and fifty-nine, for machinery which has been furnished by him to said Thomas N. Philpot and Samuel Moore, and which has been by them put up and used in the steamboat called the "John A. Moore," in said county, and in the Savannah river in said State; that said steamboat is engaged in the navigation of said Savannah river, and said Thomas N. Philpot and Samuel Moore are the owners thereof; that said steamboat has arrived at the landing port, or place of destination, to which the same was freighted, to-wit: the city of Augusta, in said county, and is now lying at the wharf in said city; that said debt became due and payable by said Thomas N. Philpot and Samuel Moore, to deponent, on the fourth day of January, eighteen hundred and fifty-nine; and that deponent has since that time, and heretofore, made a demand upon the said Thomas N. Philpot and Samuel Moore, the owners of the said steamboat, "John A. Moore," for the payment of said debt, which was refused by them. Wherefore deponent claims a lien upon said steamboat, according to the stautes in such case made and provided.

(Signed)              WILLIAM SCHLEY.

Sworn to and subscribed before me this 1st day of September, 1859.

B. H. WARREN, J. I. C. R. C.

The Court below made the following decisions:

1st. That said Acts did authorize the lien for negro hire, for negroes employed on steamboats now navigating the said Savannah river.

2d. That said mortgage, under the facts stated, is valid against the other claimants to the said fund, who have not had actual notice.

3d. That the affidavit of John Bones, President of the Bank of Augusta, is legal, though it does not run in the name

of John Bones, as President of the Corporation, viz: "The President, Directors and Company of the Bank of Augusta."

4th. That the lien can be enforced, though the affidavit be made by the attorney at law, or agent of the plaintiff.

5th. That the said lien of Solomon C. White did not bring his case within the terms of any of the Acts giving a lien upon steamboats, and that the judgment in his favor was void.

6th. That the affidavit of Wm. H. Goodrich did not bring his case within any of the Acts creating a lien upon steamboats, and that the judgment in his favor was void.

7th. That the affidavit of Wm. Schley did not bring his case within any of the Acts creating a lien upon steamboats, and that the judgment in his favor was void.

8th. That a demand for the payment of the money made upon the agent of the owners of the boat, was a demand which was legal and sufficient.

9th. That it was sufficient to state in the affidavit, that the boat upon which a lien was claimed had arrived at her place of destination, without the additional words, "to which she was freighted."

10th. That among the several judgments enforcing liens against the boats, there is a priority of lien, taking its date from the time when the debt became due, and in the case of a debt composed of several items from the date of the last item.

11th. That where the affidavit sets forth that provisions or wood were furnished to the "Fashion Line," without separating the amounts, or specifying the amounts furnished to each, and judgment is rendered against the defendants and the three boats, without any such separation or specification as above stated, it cannot be enforced.

12th. That where the affidavit sets forth that provisions, etc., were thus furnished the three boats, without a specification of the amount due by, or furnished to each, and judgment is rendered against the defendant, and one boat, it cannot be enforced.

13. That where the provisions, wood, etc., or services rendered, are supplied to two boats according to the affidavit, and judgment is rendered against the two, or against one, without any specification in the proceedings of the particular amount due from each, the judgment cannot be enforced.

14th. That where the affidavit sets forth that the provis-

ions, etc., were supplied to the three boats, and that one has arrived at the place of destination, the lien cannot be enforced against the three boats, and the judgment entered against the three is void.

15th. That the affidavit of Charles Grim, deposing that the defendants, "owners of the Fashion Line of Steamboats, to-wit: the John A. Moore, Columbia and Talomico, navigating and running on the Savannah river, in said State, are indebted to him in the sum of $1,323 00, for services rendered by this deponent, as a machinist and carpenter on board the same, and in running said steamboats during the present year; that said sum is due and has been admitted by John A. Moore, the agent of said owners; that he has demanded payment thereof from said agent personally, which was refused; and that two of said boats, to-wit: the Talomico and John A. Moore, are now lying at one of the wharfs in the city of Augusta, in said county, the port or place of destination," etc., (judgment against two of the boats), does not bring the affiant's case within the statutes, and that the judgment cannot be properly entered against two of the boats, viz: the Talomico and John A. Moore.

16th. That in another case the affidavit of Charles Grim, deposing that the defendants, "owners of the Fashion Line, to-wit: the John A. Moore, Columbia and Talomico, navigating and running on the Savannah river, in said State, are indebted to him in the sum of $1,323 00, for services rendered by this deponent, as a carpenter on board the same, and in running the said boats during the present year; that the said sum is now due; that he has demanded the same from John A. Moore, the agent of said owners, personally, which was refused; and that one of the said steamboats, to-wit: the Columbia, is now lying at one of the wharfs in the city of Augusta," etc., (judgment was rendered for the whole sum against the Columbia), does not bring the case within the statutes, and judgment cannot be taken in such a case against one boat.

17th. That the affidavit of James Hope, "that the following negro slaves, belonging to him, the said James Hope, to-wit: Billy and Joe, Bob and John, have been employed on the steamboats Columbia, Talomico and John A. Moore, belonging to what is usually known as the 'Fashion Line,' said steamboats being owned by Samuel Moore and Thomas

N. Philpot, both of said county, and said steamboats being engaged in the navigation of the Savannah river; that the owners of said steamboats are indebted to the said deponent in the sum of $2,367 67, besides interest on $1,200 00 of said sum from the 10th day of November, 1857, to 8th day of November, 1859, for services rendered by said slaves on said steamboats, to-wit: in the sum of $800 00 for services rendered by Billy and Joe, on said steamboats, from the 10th of November, 1858, at the rate of four hundred dollars per annum for the services of each; in the sum of $178 78 for services rendered from the 10th day of November, 1858, until the 1st day of November, 1859, at same rate, by same slaves, Billy and Joe, etc.; in the sum of $400 00 for the services of the said Bob and John, rendered at the rate of two hundred dollars each per annum, from the 10th of November, 1857, until the 10th of November, 1858, and in the sum of $388 89 for services rendered by said Bob and John at same rate of $200 00 each per annum from 10th Nov., 1858, to 1st Nov., 1859, and that said sum of $2,367 67 became due and payable, and within twelve months afterwards he demanded payment, by himself, of said amount, etc., of John A. Moore, the agent of said owners, personally, in said county, by whom payment was refused, etc.; that one of said steamboats—the Columbia—has arrived at its place of destination," etc., (judgment against the defendants and the three boats, November 8th, 1859), is not a compliance with the law, and the judgment is not legal.

18th. That a similar affidavit of James Hope, in another case, in which a claim is set up "for services rendered by said slaves on the said steamboats, etc., for and on account of services commencing on the 10th day of November, 1858, and ending 1st day of November, 1859, (to the amount of $1,167 67); that within twelve months he demanded payment himself of said amount, of John A. Moore, agent of said owners, personally, in said county, by whom payment of said amount was refused; that two of said steamboats, Talomico and John A. Moore, have arrived at their place of destination, to-wit: the city of Augusta," etc., (November 18th, 1859, judgments against the defendants, and the three boats), is not a compliance with the law, and the judgment is not legal.

19th. That after judgment a party cannot amend his bill

of particulars; that the power of the Court is to distribute money, not to amend judgments.

To these various decisions different parties excepted.

E. STARNES, MILLER & JACKSON, JOHN T. SHEWMAKE, WILLIAM A. WALTON, GEORGE T. BARNES, L. D. LALLERSTEDT, E. J. WALKER, for the parties.

*By the Court.*—LUMPKIN, J., delivering the opinion.

In the matter of the distribution of the money arising from the sale of the steamboats, John A. Moore, Columbia and Talomico, known as the "Fashion Line," engaged in the navigation of the Savannah river, the Court submits the following opinion upon the points covered by the various bills of exceptions:

1. We do not think a lien for negro·hire, for negroes employed on steamboats and other water craft, on various rivers in this State, extends to the Savannah river.

The first Act, passed in 1841, (*Cobb's Digest*, 426,) gives a lien for wages due the various employees on boats, for personal services; and extended to the Chattahoochee, the Altamaha, and the Ocmulgee rivers. In 1842, this Act was so amended as to include the Savannah river within its provisions. (*Cobb*, 428.)

The Act of 1845 extended the provisions of the Act of 1841 to Flint river; and it recites, that "whereas, it frequently happens that persons employed on steamboats and other water craft on the Chattahoochee, Altamaha, Ocmulgee and Flint rivers, are negroes and free persons of color: *Be it, therefore, further enacted,* that whenever any negro, being a slave or free person of color, shall be employed as pilot, engineer, first or second mate, fireman, deck hand, or in any other capacity whatever, on all steamboats and other water craft engaged in the navigation of said river, to-wit: The Chattahoochee, Altamaha, Ocmulgee, and Flint rivers, that then, in all such cases, the owner, master, agent, attorney in law or in fact, shall have the like remedies for wages," etc. (*Cobb*, 429.)

This is the first and only Act giving a lien for negro hire; and either by accident or design, Savannah river is clearly excluded from its provisions. If there can be a case where

the expression of four rivers will exclude a fifth, it is this. We dare not amend the Act, by adding to it.

It is said that these three Acts are in *pari materia.* Grant it; and make the three constitute three separate sections of the same statute, and the same result follows.

2. We see no defect or irregularity of the foreclosure of the mortgage to the Bank of Augusta.

3. By the Act of 1847, (*Cobb*, 557,) the party himself, his attorney or agent, may enforce the lien, provided against steamboats and other water craft, and by the same Act, a demand made on the owner of the boat, his agent or attorney in fact, is sufficient.

4. The claims of Solomon C. White and William H. Goodrich were properly excluded, they being for services rendered in constructing the boat. There is no lien given by law for such indebtedness.

5. The demand of William Schley is obnoxious to the objection that it does not appear by his affidavit or in any other way, that he was a " machinist," and it is only to such that this preference is given—not to such as merely sell machinery.

6. We concur in the opinion, that it is sufficient to state that the boat upon which the lien is claimed, has arrived at her place of destination, without the additional words, " to which she was last freighted," in the language of the Act of 1841.

7. Our opinion is, that the lien given by these various Acts neither takes effect from the time the debt is due, nor from the date of the last item, when the debt is composed of several items, but from the date of the judgment.

8. We hold that the mortgage lien in favor of the Bank of Augusta was not lost or displaced by the failure to have it recorded in the Custom House at Savannah. By the 1st section of the Act of 1850, (*Brightly's Digest,* 1833,) it is declared, that " no bill of sale, mortgage, hypothecation or conveyance of any vessel of the United States, shall be valid against any person other than the granter, or mortgager, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance be recorded in the office of the Collector of Customs where such vessel was registered or enrolled."

This lien had been created and recorded in the Clerk's

office of the Superior Court of Richmond county, which was notice to all the citizens of Georgia, if not to all the world, long before this vessel was enrolled at Savannah. This is a conflict between domestic creditors—our own citizens—and growing out of, and connected with, our own internal commerce. True, from the time she was enrolled, the John A. Moore was in a condition to engage in the coasting trade North or South, from New Orleans, to Boston. She never, in point of fact, however, left our own waters. This is no conflict between foreign creditors and our own citizens, but between our own citizen, whose rights were fixed by the registration of the bank mortgage in Richmond county, before the enrollment of the vessel in the Custom-house at Savannah. Nor could liens thus acquired be divested by the *ex post fact*. Otherwise, a wide door would be opened to the perpetration of the grossest frauds.

9. The Act gives a lien for "wood and provisions"—not for "*supplies.*" *Supplies* is provided for under the Act of 1842, furnished to steam saw-mills only, and not to steamboats.

10. The next point to decide in this litigation is, whether any or all the liens provided by this class of legislation is to cover all the boats belonging to a company, or is to be restricted to a particular boat? The Legislature seems to have supposed that there could be but one boat belonging to an individual or a company, whereas the fact is notorious that all the boats navigating the Savannah river at the date of these several Acts were joint-stock boats. The Fashion Line is in this category.

To hold that the vendor of provisions, which are sent to a common depot or warehouse to be distributed out to the several boats, as their necessities may demand, shall keep a separate account against *each*, is impossible. True, in some instances this might be done; in other, it could not. Moreover, there is no reason why it should. Every service rendered and everything furnished accrues to the benefit of the company generally, immaterial upon which boat it is done.

After much reflection, our conclusion is, that any one having a claim falling within the statutes, may foreclose against all the boats; and this he may do at the same time, provided they all have reached their destination, or at different times, as they may severally arrive. A foreclosure against any

one or two of the three is good ; but then the creditor is restricted to the fund arising from the sale of the boat or boats against which his judgment has deen entered up.

The question as to the equitable distribution of the money in Court, in this case, has not been brought up for the judgment of this Court, and we know not that it was expected that we should express any opinion respecting it. As it may save further litigation, we would suggest that it will depend more upon general principles, than anything special in the Acts we have been reviewing. Some rule must be adopted which will protect the mortgage lien until the other fund is exhausted. For the balance respectively due the specific lien creditors whose claims are valid, will be entitled to come in upon the proceeds of the John A. Moore.